UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

PAUL RYL,

  Plaintiff,

-VS-

SYNCHRONY BANK & ALLIED
INTERSTATE, LLC.,

  Defendant.

_____/

CASE NO.: 1:17-cv-00059-GNS

## COMPLAINT

COMES NOW Plaintiff, Paul Ryl, by and through the undersigned counsel, and sues Defendants, SYNCHRONY BANK and ALLIED INTERSTATE, LLC., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like SYNCHRONY BANK and ALLIED INTERSTATE, LLC., from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone

1

out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Simpson County, Kentucky. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Kentucky, residing in Simpson County, Kentucky.

10. Plaintiff is a "consumer" as defined in Florida Statute 559.55(8) and 15 U.S.C. § 1692(a)(3).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

13. Defendant, SYNCHRONY BANK (hereinafter "SYNCHRONY"), is a corporation with its principal place of business at 170 West Election Road, Suite 125, Draper, UT 84020, and conducting business in the state of Kentucky.

14. Defendant, SYNCHRONY, consents of and has knowledge and control of the collection activities of their agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors; including, but not limited to Defendant "ALLIED INTERSTATE LLC."

15. Defendant ALLIED INTERSTATE, LLC (hereinafter "ALLIED"), is a corporation with its principal place of business at 12755 Hwy 55, Suite 300, Plymouth, MN 55411 and conducting business in the state of Kentucky.

16. Defendant, ALLIED, is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

17. Defendants, SYNCHRONY and ALLIED, sought to collect a debt from Plaintiff that arose from a transaction incurred for personal, family or household purposes and therefore is a "consumer debt." as defined by 15 U.S.C. §1692(a)(4).

18. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (270) ***-8685, and was the called party and recipient of Defendant's calls.

19. Beginning in or about July of 2016, SYNCHRONY BANK began bombarding Plaintiff's cellular telephone (270) ***-8685 in an attempt to collect on a credit card account.

20. Defendant, SYNCHRONY BANK, intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

21. Upon information and belief, some or all of the calls the Defendant, SYNCHRONY BANK, made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a voice came on the line and/or he received prerecorded messages from SYNCHRONY BANK.

22. Additionally, Defendant SYNCHRONY left numerous artificial and/or prerecorded messages when calling the Plaintiff's cellular phone.

23. Upon information and belief, some or all of the calls the Defendant, ALLIED INTERSTATE, LLC., made to Plaintiff's cellular telephone number were made using an

4

"automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a voice came on the line from ALLIED INTERSTATE, LLC.

24. In or about July of 2016, Defendant SYNCHRONY initiated its campaign of automated phone calls to the Plaintiff on his aforementioned cellular telephone in an attempt to collect an alleged debt. Upon receipt of the calls, Plaintiff's caller ID identified that the calls were being initiated from, but not limited to, the following phone number: (678) 518-2156, (866) 314-9507, (877) 278-5297, (877) 317-5659, (866) 923-8370, (866) 780-6121, (877) 431-3810 and (866) 419-9370.

25. On or about July 26, 2016 Plaintiff answered his cellular phone, a pre-recorded voice came on the line announcing that the call was from SYNCHRONY BANK, met with an extended pause, was eventually connected to a live agent of Defendant, and demanded that Defendant stop calling his aforementioned cellular telephone number. Plaintiff asked to be put on the "do not call list."

26. Each subsequent call the Defendant SYNCHRONY made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

27. Furthermore, each call subsequently made by Defendant ALLIED made to the Plaintiff's cell phone was done so without the express consent of the Plaintiff.

5

28. The Plaintiff's conversation with Defendant SYNCHRONY demanding an end to the harassment was ignored.

29. Despite actual knowledge of their wrongdoing, the Defendant SYNCHRONY continued the campaign of abuse, calling the Plaintiff despite not having his express consent to call his aforementioned cellular telephone number.

30. From about July of 2016 through the present, Defendant SYNCHRONY made approximately one hundred and fifty (150) calls to Plaintiff's aforementioned cellular telephone number, or as will be established after a thorough review of Defendant SYNCHRONY's records. [Please see attached **Exhibit A,** demonstrating a non-exclusive call log of calls received from December 23, 2016 through December 29, 2016.]

31. Furthermore Defendant SYNCHRONY continued to leave voice messages using a pre-recorded or artificial voice message when calling the Plaintiff, despite acknowledging they did not have his express consent to do so.

32. Additionally, in or about January of 2017, Defendant ALLIED initiated its campaign of automated phone calls to the Plaintiff on his aforementioned cellular telephone in an attempt to collect an alleged debt. Upon receipt of the calls, Plaintiff's caller ID identified that the calls were being initiated from, but not limited to, the following phone number: (716) 515-0089, (704) 998-2428, (281) 524-8218, (980) 500-7125, (843) 998-6273, (214) 459-4568, (763) 486-1774.

33. When Plaintiff answered his cellular phone, a pre-recorded voice came on the line announcing that the call was from ALLIED INTERSTATE, LLC. and to "please return the call."

34. Shortly after the calls began from Defendant ALLIED to his aforementioned cellular telephone number, in approximately January of 2017, Plaintiff answered a call from

Defendant ALLIED, was connected to a live agent/representative and explained that he was continually receiving calls and demanded that the calls to his aforementioned cellular telephone cease.

35. Each call Defendant ALLIED made to the Plaintiff's cell phone was done so without the express consent of the Plaintiff.

36. The Plaintiff's conversation with Defendant ALLIED demanding an end to the harassment was ignored.

37. Despite actual knowledge of their wrongdoing, the Defendant ALLIED continued the campaign of abuse, calling the Plaintiff despite not having his express permission to call his aforementioned cellular telephone number.

38. From about January of 2017 through the present, Defendant ALLIED made approximately fifty (50) calls to Plaintiff's aforementioned cellular telephone number, or as will be established after a thorough review of Defendant ALLIED's records. [Please see attached **Exhibit B,** demonstrating a non-exclusive call log of calls received from January 2, 2017 through January 10, 2017.]

39. Plaintiff expressly revoked any consent Defendants', SYNCHRONY and ALLIED, may have mistakenly believed they had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice upon Defendant SYNCHRONY's placement of the calls.

40. Defendants, SYNCHRONY and ALLIED, have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to the Plaintiff's cellular telephone in this case.

41. Defendants, SYNCHRONY and ALLIED, have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendants, to remove the number.

42. Defendants, SYNCHRONY and ALLIED's corporate policy is structured as to continue to call individuals like the Plaintiff; despite these individuals explaining to Defendants they wish for the calls to stop.

43. Defendants, SYNCHRONY and ALLIED, have numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

44. Defendants, SYNCHRONY and ALLIED, have numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call despite being requested to stop.

45. Defendants, SYNCHRONY and ALLIED, have had numerous complaints from consumers against them across the country asking to not be called, however the Defendants continue to call the consumers.

46. Defendants, SYNCHRONY and ALLIED's corporate policy provided no means for the Plaintiff to have his number removed from the call list.

47. Defendants, SYNCHRONY and ALLIED, have a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

48. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

49. Defendants, SYNCHRONY and ALLIED, willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

50. From each and every call placed without express consent by Defendants to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

51. From each and every call without express consent placed by Defendants to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

52. From each and every call placed without express consent by Defendants to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he had repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

53. Each and every call placed without express consent by Defendants to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

54. Each and every call placed without express consent by Defendants to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

55. Each and every call placed without express consent by Defendants to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

56. Each and every call placed without express consent by Defendants to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

57. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, distraction, fatigued, nervousness, embarrassment, distress and aggravation.

## COUNT I
## SYNCHRONY BANK
### (Violation of the TCPA)

58. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty-seven (57) as if fully set forth herein.

59. SYNCHRONY BANK willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified SYNCHRONY BANK that he wished for the calls to stop.

60. SYNCHRONY BANK repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SYNCHRONY BANK for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
## ALLIED INTERSTATE, LLC
### (Violation of the TCPA)

61. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty-seven (57) as if fully set forth herein.

62. ALLIED INTERSTATE, LLC willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified ALLIED INTERSTATE, LLC that he wished for the calls to stop.

63. ALLIED INTERSTATE, LLC repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

WHEREFORE, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ALLIED INTERSTATE, LLC for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
## ALLIED INTERSTATE, LLC
### (Violation of the FDCPA)

64. Plaintiff fully incorporates and realleges paragraphs one (1) through fifty-seven (57) as if fully set forth herein.

65. At all times relevant to this action ALLIED INTERSTATE, LLC is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

66. ALLIED INTERSTATE, LLC has violated 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

67. ALLIED INTERSTATE, LLC has violated 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

68. ALLIED INTERSTATE, LLC has violated 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ALLIED INTERSTATE, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

_____
Octavio Gomez, Esquire
Florida Bar No.: 0338620
Georgia Bar No.: 617963
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
Primary Email: TGomez@ForThePeople.com
Secondary Email: LDobbins@ForThePeople.com
*Attorney for Plaintiff*